UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 09-10034 |
| vs. | : | |
| | : | |
| AUSTIN PRECISION PRODUCTS, INC. d/b/a LARUE TACTICAL | : | |
| | : | |
| Defendant. | : | |

## FIRST AMENDED COMPLAINT

Plaintiff, Atlantic Research Marketing Systems, Inc. ("A.R.M.S."), brings this action

against defendant, Austin Precision Products, Inc. d/b/a LaRue Tactical ("LaRue Tactical") for

patent infringement, trade dress infringement, trademark infringement, common law unfair

competition, defamation and unfair competition under Mass. Gen Law ch. 93A. By this

Amended Complaint, A.R.M.S. seeks, *inter alia,* injunctive relief and monetary damages and

alleges as follows:

## PARTIES

1.      A.R.M.S. is a Massachusetts corporation with its principal place of business

located at 230 W. Center Street, West Bridgewater, Massachusetts. A.R.M.S. manufactures,

markets and sells innovative small arms accessories designed and developed by its founder,

president and Chief Executive Officer, Richard Swan. A.R.M.S.' products are sold domestically

and internationally for military, government and civilian use through several channels, such as

retailers, distributors, Internet sales and mail order catalogs.

2.      Upon information and belief, LaRue Tactical is a Texas corporation with its

principal place of business located at 850 County Road 177, Leander, Texas. Upon information

and belief, LaRue Tactical manufactures, markets and sells small arms accessories. Upon

information and belief, LaRue Tactical has sold and continues to sell its products in

Massachusetts and throughout the United States through several channels, such as retailers,

distributors, mail order catalogs and over the Internet.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§§ 1331 and 1338(a) and (b), and has supplemental jurisdiction over the state law and common

law causes of action pursuant to 28 U.S.C. § 1367.

4.      The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the parties are citizens of different states and the amount in controversy exceeds

$75,000.00, exclusive of interest and costs.

5.      This Court has personal jurisdiction over LaRue Tactical because, upon

information and belief, LaRue Tactical does business in Massachusetts and markets and sells

infringing products in Massachusetts.

6.      Venue is proper under 28 U.S.C. § l391(b) and (c) and 28 U.S.C. § 1400(b).

## FACTS

### A.R.M.S., Its Products and Intellectual Property

7.      For over thirty years, A.R.M.S. and Richard E. Swan have designed,

manufactured, marketed and/or sold small arms accessories, and other mount interface devices

for commercial and military uses. Mr. Swan has invented and patented numerous devices for

small arms products, and crew-served weaponry, such as iron sights, mounts, rail platforms,

sleeved rails, dovetail rails, anti-armor mounts and grenade launcher mounts.

8.      Among other things, A.R.M.S. develops and manufactures distinctive, high-

quality weapon mounts for use in attaching to weapon platforms: flashlights, pistol grips, bipods, slings, optical lens sights, holographic lens sights, laser sights, and night vision devices in the nature of infrared detectors, invisible light projectors, thermal imaging, sensors, cameras and scopes.

9.     For over twenty years, A.R.M.S. exclusively has used an actuator platform extending from the side of many of its weapon mount configurations (the "Lever Mount System"). Consumers of weapon mounts associate the Lever Mount System with A.R.M.S.

10.     To protect the substantial goodwill associated with the design of its weapon mounts, Mr. Swan applied for and received a trademark registration from the United States Patent and Trademark Office ("PTO") for its distinctive Lever Mount System (the "Lever Mount Trade Dress"). (A true copy of U.S. Trademark Reg. No. 3,466,163, granted July 15, 2008, reflecting a first-use in commerce on June 1, 1998, is attached hereto as Exhibit A.) Mr. Swan granted A.R.M.S. an exclusive license to make, use, market and sell the Lever Mount Trade Dress.

11.     A.R.M.S. also manufactures, markets and sells a specific type of dovetail weapon mount, branded with the trademark, #17®, that features a rectangular base portion having a substantially semi-circular actuator platform extending from one side thereof.

12.     A.R.M.S. distinguishes its #17® brand in the marketplace by offering a dovetail weapon mount with superior design, performance, functionality and durability.

13.     A.R.M.S. first used the trademark, #17®, in commerce on June 1, 1998 in connection with this particular type of weapon mounts and has been using it in commerce continuously since then.

14.     During its long, widespread and continuous use of the #17® brand, A.R.M.S. has

expended considerable sums of money to advertise and promote the #17® brand. The #17® brand has been prominently featured throughout the United States and the world in brochures, industry publications and on its web site.

15. Through its promotion, advertising and quality of products, A.R.M.S. has developed considerable goodwill in its #17® brand, which is widely associated by consumers as weapon mounts manufactured and sold by A.R.M.S.

16. To protect the substantial goodwill associated with its products, Mr. Swan applied for and received a trademark registration from the PTO for its #17® trademark. (A true copy of U.S. Trademark Reg. No. 3,385,512, granted February 19, 2008, reflecting first-use in commerce on June 1, 1998, is attached as Exhibit B.) Mr. Swan granted A.R.M.S. an exclusive license to exploit the #17® trademark.

17. The #17® brand is recognized and relied on as identifying A.R.M.S. as the sole source of goods designated with the #17® mark and has become widely known amongst consumers and weapon mount industry as identifying high quality dovetail weapon mounts originating from Plaintiff. Accordingly, the #17® mark is a valuable commercial asset.

18. Additionally, to protect the substantial goodwill associated with the design of the A.R.M.S. #17® weapon mount product, Mr. Swan applied for and received a trademark registration from the PTO for its distinctive mounting platform (the "#17® Mounting Platform Trade Dress"). (A true copy of U.S. Trademark Registration Reg. No. 3,478,909, granted August 5, 2008, reflecting first-use in commerce on June 1, 1998, is attached as Exhibit C.) Mr. Swan granted A.R.M.S. an exclusive license to make, use, market and sell the #17® Mounting Platform Trade Dress registration to A.R.M.S. (The Lever Mount Trade Dress and the #17® Mounting Platform Trade Dress collectively shall be referred to as the "Trade Dress.")

19.     The Trade Dress is unique in the weapon mount marketplace, examples of which are illustrated in Exhibits D and E attached hereto.

20.     The Trade Dress creates a unique commercial impression and sets A.R.M.S.' weapon mounts apart from those offered by other manufacturers.  Consumers of weapon mounts associate the Trade Dress as originating from A.R.M.S.

21.     In an effort to promote among weapon mount consumers a conscious connection between the Trade Dress and A.R.M.S., A.R.M.S. has expended considerable sums to advertise and promote the Trade Dress and its associated products.  The Trade Dress has been prominently featured throughout the United States in press releases, industry publications and trade shows, and on its website.

22.     Certain of A.R.M.S.' dovetail weapon mounts also incorporate a specific type of lever system known as a Throw Lever®.  On July 11, 1989, the PTO issued to Mr. Swan U.S. Patent No. 4,845,871 (the "'871 patent").  (A true copy of the '871 patent is attached hereto as Exhibit F.)  Mr. Swan granted A.R.M.S. an exclusive right to exploit the '871 patent.  The '871 patent expired on April 19, 2008.

23.     A.R.M.S. has had great success selling its weapon mounts incorporating the patented Throw Lever®.

24.     A.R.M.S.' patented weapon mounts are a valuable asset of A.R.M.S. and a principal source of the company's goodwill.

**LaRue Tactical's Products and Infringement of the Trade Dress**

25.     LaRue Tactical manufactures, markets, sells and/or offers to sell, among other things, weapon mounts through retailers, distributors, mall order catalogs and over the Internet.

26.     LaRue Tactical is engaging in the unauthorized use of the Trade Dress in

connection with the sale of weapon mounts. Select examples of LaRue Tactical's infringing use of the Trade Dress are attached as Exhibit G.

27.    LaRue Tactical's infringing use of the Trade Dress in connection with the manufacture and distribution of weapon mounts is calculated to deceive consumers into believing that LaRue Tactical's products are provided by, originated from or are associated with A.R.M.S.

28.    LaRue Tactical's use of the Trade Dress in connection with weapon mounts is likely to cause confusion with consumers and customers within the small arms industry.

29.    Upon information and belief, LaRue Tactical intentionally copied the Trade Dress.

30.    Upon information and belief, LaRue Tactical is attempting to confuse and mislead weapon mount consumers by offering for sale, advertising and selling its weapon mounts through retailers, trade shows, catalogs and on the Internet.

31.    Upon information and belief, LaRue Tactical misappropriated the Trade Dress for the express purpose of trading on A.R.M.S.' well-known and distinctive Trade Dress.

**Infringement of the #17® Trademark**

32.    LaRue Tactical is manufacturing, marketing, selling and/or offering to sell weapon mounts bearing the #17® mark.

33.    LaRue Tactical's use of the #17® mark in connection with weapon mounts implies, falsely, that it manufactures and sells #17® weapon mounts. (A true copy of a website printout featuring the "LaRue Tactical Surefire 17 Upgrade LT-170" is attached hereto as Exhibit H.)

34.    LaRue Tactical's use of the #17® brand in connection with weapon mounts is

calculated to deceive consumers into believing that LaRue Tactical's weapon mounts are provided by or associated with A.R.M.S.

35.  LaRue Tactical's use of the #17® brand in connection with weapon mounts is likely to cause confusion with consumers and customers within the small arms industry.

36.  Further, upon information and belief, LaRue Tactical is using the #17® mark in connection with weapon mounts for the express purpose of trading on A.R.M.S.' well-known and respected #17® brand.

**Infringement of the '871 Patent**

37.  LaRue Tactical is manufacturing, marketing, selling and/or offering to sell weapon mounts incorporating a so-called "speed lever" (the "Accused Products").

38.  The Accused Products infringe one or more of the claims of the '871 patent.

39.  A.R.M.S. wrote to LaRue Tactical demanding that it immediately cease and desist its sale of the Accused Products.  Notwithstanding this, LaRue Tactical continued to market and sell the Accused Products.

40.  LaRue Tactical intentionally infringed the '871 patent by manufacturing, marketing, selling and/or offering for sale the Accused Products in the United States, including Massachusetts.

41.  LaRue Tactical's wrongful actions were conducted without authorization or license.

42.  LaRue Tactical had prior knowledge of the '871 patent, and therefore its conduct is both willful and deliberate.

**LaRue Tactical's Defamatory Statements**

43.  On or about July 18, 2009, an internet dialog titled "ARMS vs. Troy Federal

Court Awards ARMS $1.8 Million For Theft of Secrets" (the "Thread") began.

44.    Upon information and belief, the Thread was available for review, and was viewed by individuals associated with the small arms accessories industry, including customers, prospective customers and supplier of A.R.M.S.

45.    Upon information and belief, Larue Tactical participated in the Thread under the moniker "LaRue_Tactical."

46.    LaRue Tactical made numerous statements in the Thread concerning this litigation, A.R.M.S. and A.R.M.S.'s products.  A true copy of LaRue Tactical's comments on the Thread is attached hereto as Exhibit I.

47.    On or about July 21, 2009, LaRue Tactical made false and defamatory statements in the Thread stating that A.R.M.S.'s products frequently failed, that it was "criminal" that A.R.M.S. products were being installed on combat items, that A.R.M.S. products endangered the lives of American soldiers, and that A.R.M.S. products endangered missions conducted in America's war on terror.

48.    On or about July 22, 2009, LaRue Tactical made false and defamatory statements in the Thread stating that it had corroborating information showing that A.R.M.S.'s products endangered American soldiers and missions.

49.    On or about July 23, 2009, LaRue Tactical made false and defamatory statements in the Thread stating that A.R.M.S. had engaged in a practice of fraudulently threatening litigation.

50.    On or about July 24, 2009 at approximately noon, LaRue Tactical made false and defamatory statements in the Thread stating that A.R.M.S. products were manufactured in China.

51.    Upon information and belief, LaRue has participated in other internet dialogs

concerning A.R.M.S. and A.R.M.S.'s products and has made other false and defamatory statements.

**COUNT I**
**(Infringement of the '871 Patent—35 U.S.C. §271)**

52.     A.R.M.S. realleges and incorporates by reference paragraphs 1 through 50 as if fully set forth herein.

53.     Defendant knowingly and intentionally infringed the '871 patent.

54.     A.R.M.S. has suffered substantial damage as a result of Defendant's infringement of the '871 patent including, but not limited to, the loss of commercial value of its Throw Lever® product line, loss of the value of its patent, loss of goodwill, and other injuries to A.R.M.S.' business.

55.     A.R.M.S. is entitled to an accounting of defendant's profits derived from the sale of the Accused Products.

56.     Defendant committed such acts in an intentional and willful manner that make this case exceptional under 35 U.S.C. § 285.

**COUNT II**
**(Federal Trade Dress Infringement—15 U.S.C. §1125(a))**

57.     A.R.M.S. realleges and incorporates by reference paragraphs 1 through 554 as if fully set forth herein.

58.     Defendant, without the consent of A.R.M.S., has used, and is using, in commerce A.R.M.S.' Trade Dress in connection with the sale and offering for sale of weapon mounts, which use is likely to cause confusion, or to cause mistake or to deceive.

59.     Upon information and belief, Defendant had actual knowledge of A.R.M.S.' ownership and prior use of the Trade Dress and, without consent of A.R.M.S., has used, and is

using, the Trade Dress with the intent to trade upon A.R.M.S.' reputation and goodwill by causing confusion and mistake among customers and the public, and by deceiving them.

60. Defendant's acts constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §l125(a).

61. Defendant's acts are intentional, willful and in bad faith.

62. The aforesaid acts of Defendant have caused, and are causing irreparable harm and damage to A.R.M.S., and unless preliminary and permanently restrained by this Court, said irreparable injury will continue.

63. A.R.M.S. has no adequate remedy at law.

## COUNT III
### (Federal Unfair Competition, False Designation of Origin and False Advertising—15 U.S.C. §1125(a))

64. A.R.M.S. realleges and incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

65. The aforesaid acts of Defendant constitute the intentional use of words, terms, names, symbols and devices and combinations thereof, false designations of origin, and false and misleading representations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant with A.R.M.S., or as to the origin, sponsorship or approval of Defendant's products.

66. The aforesaid acts of Defendant constitute the use of words, terms, names, symbols and devices and combinations thereof, false designations of origin, and false and misleading representations of fact that in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of Defendant's products or other commercial activities.

67. The aforesaid acts of Defendant constitute false designation of origin, false and

misleading descriptions and representations, federal unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

68.     The aforesaid acts of Defendant have caused, and are causing, great and irreparable harm and damage to A.R.M.S., and unless preliminarily and permanently restrained by this Court, said irreparable injury will continue.

69.     A.R.M.S. has no adequate remedy at law.

## COUNT IV
### (Federal Trademark Infringement—15 U.S.C. §1114)

70.     A.R.M.S. realleges and incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

71.     Defendant, without the consent of A.R.M.S., has used in commerce marks confusingly similar and/or identical to A.R.M.S.' federally-registered #17® trademark in connection with the sale and offering for sale of weapon mounts, which use is likely to cause confusion, or to cause mistake or to deceive.

72.     Defendant's acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

73.     Defendant's acts are intentional, willful and in bad faith.

74.     The aforesaid acts of Defendant have caused, and are causing, great and irreparable harm and damage to A.R.M.S., and unless preliminarily and permanently restrained by this Court, said irreparable injury will continue.

75.     A.R.M.S. has no adequate remedy at law.

## COUNT V
### (Common Law Unfair Competition)

76.     A.R.M.S. realleges and incorporates by reference paragraphs 1 through 74 as if

fully set forth herein.

77. Defendant's aforesaid acts are a violation and derogation of A.R.M.S.' common law rights and are likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of Defendant's products, and Defendant's aforesaid acts are likely to cause confusion, mistake and deception among consumers and the public as to Defendant's affiliation with or sponsorship by A.R.M.S. of Defendant's aforesaid acts.

78. Defendant's aforesaid acts are causing loss, damage and injury to A.R.M.S. and to the purchasing public.

79. Defendant knows, or in the exercise of reasonable care should know, that its conduct is likely to so mislead the public.

80. The foregoing conduct by Defendant has been knowing, deliberate, willful, intended to cause mistake or to deceive, and in disregard of A.R.M.S.' rights.

81. Defendant's wrongful acts, as alleged above, have permitted or will permit it to make substantial sales and profits on the strength of A.R.M.S.' nationwide and international marketing, advertising, sales and consumer recognition.

82. As a direct and proximate result of Defendant's wrongful conduct, as alleged above, A.R.M.S. has been and will be deprived of substantial sales of products and services in an amount as yet unknown but to be proved at trial, and has been and will be deprived of the value of its registered trade dress, trademarks and brand in an amount as yet unknown, but to be determined at trial.

83. The aforesaid acts of Defendant constitute unfair competition in violation of common law.

84.     The aforesaid acts of Defendant have caused and are causing irreparable harm and damage to A.R.M.S., and unless preliminarily and permanently restrained by this Court, said irreparable injury will continue.

85.     A.R.M.S. has no adequate remedy at law.

## COUNT VI
### (Defamation)

86.     A.R.M.S. realleges and incorporates by reference paragraphs 1 through 84 as if fully set forth herein.

87.     A.R.M.S. is not a public figure.

88.     LaRue Tactical made and published false and defamatory statements about A.R.M.S. on the Thread to third persons, including, but not limited to, customers and prospective customers of A.R.M.S.

89.     The false and defamatory statements made and published by LaRue Tactical are reasonably susceptible of a defamatory meaning.

90.     The false and defamatory statements made and published by LaRue Tactical would tend to hold A.R.M.S. up to scorn, ridicule or contempt in the minds of to third persons, including, but not limited to, A.R.M.S.'s customers and prospective customers.

91.     Upon information and belief, LaRue Tactical made and published such false and defamatory information with at least negligent care for the veracity of the information.

92.     Upon information and belief, LaRue Tactical made and published such false and defamatory information with malice or reckless disregard for the veracity of the information.

93.     LaRue Tactical published such false and defamatory information in writing.

94.     The false and defamatory statements made and published by LaRue Tactical were defamatory *per se*.

95.     As a result of the false and defamatory statements made and published by LaRue Tactical, A.R.M.S. has suffered both general damages to its reputation and special damages.

## COUNT VII
## (Violation of Mass. Gen. Law c. 93A)

97.     A.R.M.S. realleges and incorporates by reference paragraphs 1 through 94 as if fully set forth herein.

98.     LaRue Tactical is engaged in trade or commerce within the Commonwealth of Massachusetts.

99.     LaRue Tactical committed unfair methods of competition and deceptive acts or practices in trade or commerce by knowingly and willfully making and publishing false and defamatory statements about A.R.M.S.

100.    LaRue Tactical committed unfair methods of competition and deceptive acts or practices in trade or commerce by using marks that are confusingly similar and/or identical to the marks used by A.R.M.S.

101.    Such actions constitute unfair and deceptive acts in trade or commerce in violation of Mass. Gen. Law 93A.

102.    LaRue Tactical's unfair methods of competition and deceptive acts and practices in trade or commerce have caused A.R.M.S. to suffer financial damage.

103.    LaRue Tactical's unfair methods of competition and deceptive acts and practices in trade or commerce will continue to injure A.R.M.S. unless enjoined.

104.    LaRue Tactical's unfair and deceptive acts and practices in trade or commerce have been willful violations.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Atlantic Research Marketing Systems, Inc. prays for judgment

in its favor and against Defendant Austin Precision Products, Inc. d/b/a LaRue Tactical, and requests that:

A.      Judgment enter in its favor and against Defendant on each Count of the Complaint;

B.      Defendant be adjudged to have infringed the '871 patent and that such infringement be adjudged to have been willful;

C.      A.R.M.S. be awarded damages in an amount no less than a reasonable royalty for Defendant's infringement of the '871 patent;

D.      A.R.M.S. be awarded treble damages pursuant to 35 U.S.C. § 284 because of the willful nature of Defendant's acts;

E.      A.R.M.S. be awarded prejudgment interest;

F.      A.R.M.S. be awarded its costs, attorneys' fees, and expenses in this suit under 35 U.S.C. § 285;

G.      Defendant, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from:

(1)  using on or in connection with the advertising, promotion, offering for sale, sales or distribution of small arms products, the #17® Mark or any variations thereof that are confusingly similar to Plaintiff's #17® Mark;

(2)  using on or in connection with the advertising, promotion, offering for sale, sales or distribution of small arms products, the Trade Dress or any variations thereof or anything confusingly similar thereto;

(3)  representing by any means whatsoever, directly or indirectly, or doing any

other act (or things calculated or likely to cause confusion, mistake or to deceive consumers into

believing that Defendant's products are those of A.R.M.S., or that there is any affiliation or

connection between A.R.M.S. or its products and Defendant or its products, and from otherwise

unfairly competing with Plaintiff);

(4) causing to be advertised, published or disseminated by any means any false or

misleading representations as to the existence of any relationship between Defendant and

A.R.M.S. or between any products of Defendant and any products and services of A.R.M.S.;

H. A.R.M.S. recover its damages sustained as a result of Defendant's infringement,

unfair competition and false designation of origin under federal, state and common law, together

with an accounting of Defendant's profits arising from such activities, and that the Court

exercise its discretion and enter a judgment for such additional sums as the Court shall find to be

just, according to the egregious, willful and intentional nature of the acts of Defendant;

I. Defendant be required to: (1) surrender for destruction, or other disposition at the

election of A.R.M.S., all extrusions, molds, dies, components-in-progress, components,

production materials, products, castings, fixtures, prints, computer programs, solid modeling,

prototypes, engineering records and all means of manufacture associated with the production of

products that infringe A.R.M.S.' Trade Dress; and (2) recall from any and all channels of trade,

any and all advertising or promotional materials using the #17® mark and/or the Trade Dress in

connection with small arms products or any variations thereof that are confusingly similar to

Plaintiffs mark and/or Trade Dress, and to take affirmative steps to dispel any false suggestion of

a connection to A.R.M.S. by virtue of its activities, including, but not limited to, all necessary

and appropriate corrective advertising measures;

J. A.R.M.S. recovers treble damages under 15 U.S.C. § 1117;

K.      A.R.M.S. recovers its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

L.      Defendant, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from making any further false and defamatory statements against A.R.M.S.;

M.      Defendant be required to take affirmative steps to dispel the false and defamatory statements published by it, including, but not limited to, all necessary and appropriate corrective advertising measures;

N.      A.R.M.S. recovers all general damages to its reputation incurred as a result of Defendant's false and defamatory statements;

O.      A.R.M.S. recovers special damages incurred as a result of Defendant's false and defamatory statements;

P.      A.R.M.S. recovers all attorneys' fees expended as a result of Defendant's false and defamatory statements;

Q.      A.R.M.S. recovers all attorneys' fees expended as result of LaRue Tactical's violation of Mass. Gen. Law c. 93A.

R.      A.R.M.S. recovers treble damages as a result of LaRue Tactical's violation of Mass. Gen. Law c. 93A.

S.      A.R.M.S. recovers its costs and disbursements herein; and

T.      A.R.M.S. be awarded such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**
**FOR ALL ISSUES SO TRIABLE.**


Respectfully submitted,
ATLANTIC RESEARCH
MARKETING SYSTEMS, INC.
By its Attorneys


/s/ Craig M. Scott
Craig M. Scott (BBO No. 556210)
Christine K. Bush (BBO No. 635381)
SCOTT & BUSH LTD.
30 Kennedy Plaza, Fourth Floor
Providence, Rhode Island 02903
(401) 865-6035
(401) 865-6039 FAX
cscott@scottbushlaw.com
cbush@scottbushlaw.com

Dated: December 24, 2009

## CERTIFICATE OF SERVICE

I hereby certify that the within *First Amended Complaint* was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 24, 2009:

Thomas P. McNulty                          Adam Pugh
Lowrie, Lando & Anastasi, LLP              Slater Kennon & Jameson, LLP
Riverfront Office Park                     4807 Spicewood Springs Road
One Main Street                            Building 2, Suite 240
Cambridge, MA 02142                        Austin, TX   78759


                                        /s/ Craig M. Scott