UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ATLANTIC RESEARCH MARKETING          )
SYSTEMS, INC.                        )
                                     )
     Plaintiff,                      )
                                     )      CIVIL ACTION NO.
v.                                   )      09-10034-DPW
                                     )
AUSTIN PRECISION PRODUCTS, INC.      )
d/b/a LARUE TACTICAL                 )
                                     )
     Defendant.                      )

MEMORANDUM AND ORDER
May 12, 2010

     Plaintiff Atlantic Research Marketing Systems, Inc. ("ARMS")
brought this action against Defendant Austin Precision Products,
Inc. d/b/a/ LaRue Tactical ("LaRue Tactical") alleging, among
other causes of action, infringement of U.S. Patent No. 4,845,871
(the "'871 Patent"). The '871 Patent involves an attachment
device for weapons.

     Under Federal Circuit law, addressing a question of patent
infringement "involves a two-step process: the court first
determines the meaning of disputed claim terms and then compares
the accused device to the claims as construed." *Wavetronix LLC
v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir.
2009). This litigation is currently before me in the claim
construction phase. After addressing the background of the case

-1-

and the relevant legal principles, I will construe the disputed claim term.

## I. BACKGROUND

### A.  The Parties

ARMS is a Massachusetts corporation with its principal place of business in Massachusetts.  LaRue Tactical is a Texas corporation with its principal place of business in Texas.  Both parties manufacture, market, and sell small arms accessories.

### B.  Technical Background

Numerous efforts have been made to implement methods for attaching telescopic sights to hunting rifles and special purpose military sniping rifles.  Early attempts to attach such an accessory to a firearm date back to 1880 when the first telescopic sight was built.  More recently, the Weaver rail and the similar Picatinny rail have been developed to provide attachment means for various accessories ranging from telescopic sights to rangefinders to flashlights.  While these rail systems were originally implemented on AR-16 and M16 style firearms, their popularity lead them to be used on other types of firearms and to be developed and marketed by many companies, including the parties.

### C.  The '871 Patent

The United States Patent and Trademark Office issued the '871 Patent entitled "Attachment Device" to ARMS' President and

Chief Executive Officer, Richard Swan, on July 11, 1989.  Swan has granted ARMS the exclusive right to exploit the '871 Patent.

The '871 Patent concerns a device for fastening weapon accessories, such as lasers and sights, to a dovetail platform on a weapon.  As provided in the specification, the '871 Patent "comprises a means of attaching a first device to a second device."  '871 Patent col. 1 ll. 43-44.  "The attachment means is particularly useful in attaching a first weaver interface to a second weaver interface."  *Id.* at col. 1 ll. 46-48.  More generally, the camming surfaces and the spring loading of the invention permit "proper attachment to varying interface surfaces."  *Id.* at col. 1 ll. 48-50.

### D.   *Procedural History*

On January 9, 2009, ARMS commenced this action against LaRue Tactical alleging infringement of the '871 Patent (Count I), federal trade dress infringement (Count II), federal unfair competition, false designation of origin and false advertising (Count III), federal trademark infringement (Count IV), and common law unfair competition (Count V).  Specifically, ARMS alleges that LaRue Tactical knowingly and intentionally manufactures, markets, sells, and/or offers to sell weapon mounts incorporating a so-called "speed-lever," which would infringe Claims 2 and 3 of the '871 Patent.

On July 24, 2009, LaRue Tactical counterclaimed by seeking, among others, declaratory judgment of non-infringement, invalidity, and unenforceability.

On October 22, 2009, LaRue Tactical submitted its Opening Claim Construction Brief disputing a total of nine claim terms from the '871 Patent.  In that brief, LaRue Tactical contended that "[a]lthough claim 2 of the '871 Patent recites the term 'means', the claim also goes on to elaborate sufficient structure within the claim itself to perform entirely the recited function."  Accordingly, LaRue Tactical concluded that "claim 2 is not in a means-plus-function format."  ARMS filed responsive claim construction briefing.

On December 16, 2009, LaRue Tactical, however, moved for leave to file a Substitute Claim Construction Memorandum.  LaRue Tactical argued that, "upon further review," it wished to reverse its prior position with respect to the construction of the term "actuating means," found in Claim 2 and by reference in Claim 3 of the '871 Patent, now contending that this term should be construed as a means-plus-function limitation pursuant to 35 U.S.C. § 112 ¶ 6.  In addition, LaRue Tactical indicated its intention to withdraw its initial construction of the remaining terms thereby agreeing with ARMS that such terms should be "given their plain meaning."

A *Markman* hearing was originally scheduled for December 23, 2009.  Due to the belated effort at revision of LaRue Tactical's claim construction, the December 23 hearing was used to rule on several motions filed by the parties rather than to begin consideration of the construction of the disputed claim terms. During that hearing, I denied LaRue Tactical's motion for a more definite statement with respect to ARMS' Initial Infringement Contentions and granted ARMS's motion to amend the Complaint. Although untimely, I also granted LaRue Tactical's motion for leave to file a Substitute Claim Construction Memorandum but ordered LaRue Tactical to show cause for its failure to identify the relevant legal issues for claim construction purposes in a timely manner.  I further suggested that an appropriate sanction would be for LaRue Tactical's counsel to pay $5,000 for the wasted time and effort caused by the filing of its untimely Substitute Claim Construction Memorandum.[1]

On December 24, 2009, ARMS filed its First Amended Complaint incorporating two additional counts: defamation (Count VI) and violation of Massachusetts General Laws Chapter 93A (Count VII). Thereafter, LaRue Tactical filed its Substitute Claim Construction Memorandum to which ARMS has responded.

---

[1]  In a notice addressed to the Court on January 11, 2010, LaRue Tactical's counsel agreed to pay this amount in accordance with the instruction of the Court.  At the scheduling conference in this matter on March 10, 2010, I directed that payment be made to ARMS.

## II. LEGAL STANDARDS FOR CLAIM CONSTRUCTION

### A.  *General Considerations*

As the Federal Circuit has observed, "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The construction of claims is a question of law to be determined by the court.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

Claim terms "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic*, *Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  This is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.  When the ordinary meaning of claim language as understood by a person of skill in the art is readily apparent, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When the ordinary meaning of an asserted claim is, however, not readily apparent, the court should look to the intrinsic evidence of record, i.e., "the patent itself, including the claims, the specification and, if in evidence, the prosecution

history." *Vitronics*, 90 F.3d at 1582.  The court should first look to "the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Id.* Second, the court should "review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Id.*  Because "[t]he specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it," the specification is the "best guide to the meaning of a disputed term." *Id.*  However, "[w]hen consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (en banc); *see also Comark Commc'ns v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (rejecting the contention "that limitations from the specification may be read into the claims").

When the meaning of a term still appears ambiguous after consulting intrinsic evidence, the Federal Circuit has authorized district courts to rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quoting *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir.

1995)).  "However, while extrinsic evidence 'can shed useful light on the relevant art,' [the Federal Circuit has emphasized] that it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)) (internal citation and quotation marks omitted).

**B.   *Specific Means-Plus-Function Considerations***

Section 112, paragraph 6, of title 35 provides that:

An element of a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6.

Under Federal Circuit law, "[u]se of the word 'means' in claim language creates a presumption that § 112 ¶ 6 applies." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008).  However, "[i]f, in addition to the word 'means' and the functional language, the claim recites sufficient structure for performing the described functions in their entirety, the presumption of § 112 ¶ 6 is overcome-the limitation is not a means-plus-function limitation."  *Id.; Phillips*, 415 F.3d at 1311 ("Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function.").  The Federal Circuit has advised that

-8-

"[s]ufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed*, 514 F.3d at 1259-60.

The Federal Circuit has created a protocol for the claim construction process in this context. "Claim construction of a means-plus-function limitation includes two steps. First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007) (quoting *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)). "The determination of the claimed function and corresponding structure of a means-plus-function claim limitation is a question of law." *Id.* at 1240-41 (quoting *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1087 (Fed. Cir. 2003)).

### III. DISPUTED CLAIM TERM

The only claim term now in dispute is "actuating means" used in Claim 2 and by reference in Claim 3 of the '871 Patent. The construction of this term depends on whether I find this term to be a means-plus-function claim limitation within the meaning of 35 U.S.C. § 112 ¶ 6.

-9-

**A.    The Term "Actuating Means" Is a Means-Plus-Function Claim
       Limitation**

LaRue Tactical argues that the term "actuating means" should

be construed as a means-plus-function claim limitation because

Claim 2 does not recite sufficient structure for performing the

described function.[2]   The relevant structure provided in Claim 2

of the '871 Patent with respect to the "actuating means" reads as

follows:

> A fastening device comprising a locking means and an
> actuating means . . . the actuating means including a
> base having a top surface and a centrally positioned
> aperture formed therethrough, a tubular portion extending
> from the top surface in coaxial relation to the aperture
> and in right angle relation to the top surface . . .
> the shaft of the locking means being positioned in the
> tubular portion of the actuating means with the actuating
> means engaged to the locking means and the tubular
> portion butted against the support.

'871 Patent col. 4 l. 61 – col. 5 l. 19.

More specifically, LaRue Tactical contends that Claim 2 does

not comprise sufficient structure to activate the locking means

because an essential element to perform this function, the

"actuating handle," is missing from the recited structure.   While

the term "actuating handle" does not appear in Claim 2, I agree

---

[2]    Because LaRue Tactical contends that the term "actuating
means" recites a function, that of actuating, I move directly to
the question of the sufficiency of structure.   As Federal Circuit
precedent makes clear, "the presence of the word 'means' and the
articulation of a function is not the end of the inquiry."
*TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1260 (Fed. Cir.
2008).   The principal issue now before me is whether Claim 2
provides sufficient structure for performing the function of
actuating.

with LaRue Tactical that it is mainly the actuating handle that performs the function of actuating the locking means.  This is clear from the specification, *see, e.g.,* '871 Patent col. 3 ll. 37-40 ("The tubular portion **84** includes an external surface from which an actuating handle **88** extends in right angle relation to the vertical axis of the tubular portion **84**."), *id.* at col. 3 ll. 65-68 ("This engagement extends the actuating handle **88** of the first actuating means **70** away from the support portion **34***a* and across the plane of the second edge **72***b* of the first base portion **72**."), *id.* at col. 4 ll. 14-19 ("Rotation of the lever of the first fastening device **64** in a counterclockwise direction and of the lever of the second fastening device **64** in a clockwise direction causes their respect first or second camming areas to pass, in abutting relation, under the engagement surface **35** of the first rail **36**."), from the drawings of '871 Patent, *see, e.g.,* Figures 8 & 9, as well as from the animation provided by ARMS.

I find that, because of the lack of actuating handle, Claim 2 of the '871 Patent does not provide sufficient structure, materials or acts within the claim itself to show how the recited function, that of actuating, can be accomplished.  I therefore conclude that the term "actuating means" used in Claim 2 and by

-11-

reference in Claim 3 of the '871 Patent should be construed as a means-plus-function claim limitation pursuant to 35 U.S.C. § 112 ¶ 6.[3]

**B.   *Claim Construction of the Term "Actuating Means"***

When a claim is found to be to be in a means-plus-function format, "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112 ¶ 6.  When doing so, "a court may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are *unnecessary* to perform the claimed function."  *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1097 (Fed. Circ. 2008) (quoting *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001)) (emphasis added).

LaRue Tactical argues that the actuating means should be construed as to include an actuating handle and to require that the actuating handle be mechanically linked to the shaft of the

---

[3]   Relying on *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142 (Fed. Cir. 2004), ARMS argues that Claim 2 does elaborate sufficient structure to perform the recited function.  In *Searfoss*, the Federal Circuit held that the "actuation means" limitation was not a means-plus-function limitation because the claim specifically recited the structure that performed the claimed function, that of actuation, thus overcoming the presumption resulting from use of the word "means."  *Id.* at 1149. I find ARMS' reliance on *Searfoss* to be misplaced because, contrary to the claim at issue in *Searfoss*, Claim 2 of the '871 Patent cannot provide sufficient structure to accomplish the recited function without the "actuating handle."

locking means by the pin and horizontal hole arrangement found in the specification of the '871 Patent.  To support this argument, LaRue Tactical relies on the engagement process described in the following part of the specification of '871 Patent:

> Association of the subassembly of the locking means **68** and the support **71** with the first actuating means **70,** is accomplished by passing the shaft **74** of the locking means **68** through the aperture **82** and then through the tubular portion **84**, in a press fit, horizontally aligning the opening **78** of the shaft **74** and the hole **86** of the tubular **84**. This engagement extends the actuating handle **88** of the first actuating means **70** away from the support portion **36***a* and across the plane of the second edge **72***b* of the first base portion **72**.  *A pin **34** is then passed through the hole **86** of the tubular portion **84** and the aligned opening **78** of the shaft **74**.*

'871 Patent col. 3 l. 58 – col. 4 l. 2 (emphasis added).

As discussed in Section III.A. *supra*, I find that the actuating handle is necessary to perform the function of actuating and therefore construe the term "actuating means" to include an "actuating handle."  In contrast, I do not find it necessary that the actuating handle be mechanically linked to the shaft of the locking means as described by LaRue Tactical.  In this respect, I consider the provision of Claim 2 pursuant to which "the actuating means [is] *engaged* to the locking means" to be sufficient to perform the function of actuating.  *Id*. at

col. 5 l. 18 (emphasis added).[4]   Accordingly, I reject LaRue

Tactical's effort to limit the language of Claim 2 of the '871

Patent to the preferred embodiment described in the

specification.

In sum, I conclude that the term "actuating means" is a

means-plus-function claim limitation which is to be construed to

include an actuating handle.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[4]   Because I find the mechanism described by LaRue Tactical
to be unnecessary to perform the function of actuating, I adopt
the Federal Circuit's cautionary approach with respect to
importing limitations into claims.  As discussed in Section II.A.
*supra*, "[w]hen consulting the specification to clarify the
meaning of claim terms, courts must take care not to import
limitations into the claims from the specification." *Abbott
Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (en
banc).  For instance, "[a]lthough the specification often
describes very specific embodiments of the invention," the
Federal Circuit has "repeatedly warned against confining the
claims to those embodiments." *Kara Tech. Inc. v. Stamps.com
Inc.,* 582 F.3d 1341, 1345 (Fed. Cir. 2009).  In particular, the
Federal Circuit has "expressly rejected the contention that if a
patent describes only a single embodiment, the claims of the
patent must be construed as being limited to that embodiment."
*Id*.