IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br><br>AUSTIN PRECISION PRODUCTS, INC., d/b/a LARUE TACTICAL,<br><br>Defendant. | Civil Action No. 09-10034 (DPW) |

**REPLY IN SUPPORT OF AUSTIN PRECISION PRODUCTS, INC.'S, MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

**Leave to file granted on December 6, 2010**

A.R.M.S. has asserted patent infringement claims against LaRue Tactical that rely on tortured interpretations of terms whose meanings are plain and clearly understood, such as "base" and "spaced from." A.R.M.S. necessarily seeks such tortured constructions because the products that it accuses of infringement clearly do not embody these limitations as they would be ordinarily understood by those skilled in the art. LaRue moved for summary judgment of non-infringement, identifying the plain meaning of these terms and noting that, because the Accused Products do not embody each and every limitation of the asserted claims, summary judgment of noninfringement was appropriate.

A.R.M.S.' Opposition (dckt no. 160) offers no actual evidence of a disputed issue of material fact, instead offering only conclusory and unsupported testimony of a purported expert to contradict LaRue Tactical's evidence as to the plain meaning of these limitations. Additionally, A.R.M.S. improperly compared the accused product with a commercial product of A.R.M.S. rather than with the claims of the '871 patent. Nothing offered by A.R.M.S. raises any

1

issue of disputed material fact, and therefore summary judgment of noninfringement should be granted.

> 1. **A.R.M.S.' Expert Opinion Does Not Create an Issue of Material Fact, And Instead Merely Consists Of Conclusory Arguments**

A.R.M.S purports to provide expert testimony, by way of the Declaration of Phillip O'Keefe ("O'Keefe Dcl."), to counter the factual evidence put forth by Defendant in support of its motion for summary judgment of noninfringement. O'Keefe's declaration, however, consists virtually entirely of unsupported and conclusory expert opinion of the type that has repeatedly been held insufficient to overcome a motion for summary judgment, as detailed below.

> > a. **Conclusory Assertions from a purported expert are insufficient to raise a genuine issue of material fact**

"Conclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Sitrick v. DreamWorks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008). "It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) (determining that Dynacore's expert's opinions are "conclusory assertions, reached using words in ways that contradict their plain meaning" and finding that these assertions "did not create a material factual dispute for trial."); *see also Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (holding that, in moving for summary judgment on an issue as to which the plaintiff bore the burden of proof, the defendant discharged its initial responsibility by stating the basis for its motion and pointing out that the evidence in the record would be insufficient to avoid a directed verdict against the plaintiff; in response, plaintiff was required to designate specific facts showing that there was a genuine issue for trial, which

plaintiff's conclusory expert report failed to do); *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (conclusory expert declarations devoid of facts upon which the conclusions were reached do not raise a genuine issue of material fact); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (expert declarations that accused product and process met the critical claim limitation were "wholly conclusory, devoid of facts upon which the affiant[s'] conclusions, as experts, were reached").

The affidavit of an expert submitted in opposition to a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Thus, "the expert must set forth the factual foundation for his opinion -- such as a statement regarding the structure found in the accused product -- in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the nonmovant. *Arthur A. Collins*, 216 F.3d at 1046-8.

The proposal of a particular construction of a claim term, standing alone, is insufficient to create an issue of material fact. *See, e.g.*, *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797 (Fed. Cir. 1990) (finding expert affidavit amounted to "no more than a legal opinion, not fact evidence, on what constitutes an 'extension' in the context of the claim" and noting that a "mere dispute concerning the meaning of a term does not itself create a genuine issue of material fact."); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579-1580 (Fed. Cir. 1989) (noting that, while a disputed issue of fact may arise "in connection with interpretation of a term in a claim if there is a genuine evidentiary conflict created by the underlying probative evidence pertinent to the claim's interpretation . . . conflicting opinions on the meaning of a term which are merely conclusory do not create such evidentiary conflict.").

### b. A.R.M.S.' expert declaration consists exclusively of conclusory opinions

A.R.M.S., in opposing the motion for summary judgment, relies on a declaration of a purported expert, Phillip J. O'Keefe. Mr. O'Keefe's declaration, however, is devoid of factual evidence, and instead presents only Mr. O'Keefe's conclusory opinions on what particular claim terms would mean to one of skill in the art and whether limitations are found in the Accused Products. Such conclusory opinion, devoid of factual support, does not raise a triable issue of material fact. *See, e.g.*, *Sitrick*, 516 F.3d at 101; *Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins,* 216 F.3d at 1046; *Zelinski*, 185 F.3d at 1317; *Phillips Petroleum Co.*, 157 F.3d at 876.

#### i. "Actuating Means" having a "base" and a "tubular portion"

Mr. O'Keefe disagrees with Defendant regarding the plain meaning of the term "base" without ever offering an alternative definition. *See* O'Keefe Decl. at ¶ 19 ("I disagree with the defendant's narrow definition of 'base.'"). Instead, O'Keefe moves straight to a discussion of the purpose of the base:

> In the context of the '871 patent, a person of ordinary skill in the art would understand that the base of the actuating means must facilitate rotation of the locking means into (and out of) position beneath the rail and support the tubular portion so that it places upward tension on the locking means via the shaft.

O'Keefe provides no reason why one of skill in the art would read all of this into the term "base" – indeed, O'Keefe offers this as an unsubstantiated opinion.[1] As such, O'Keefe's opinion regarding the term "base" should be given no weight. *See, e.g.*, *Sitrick*, 516 F.3d at 101;

---

[1] O'Keefe does, at ¶ 18 of his Declaration, reference select portions of the '871 specification. This reference is, as O'Keefe acknowledges, solely to a preferred embodiment, and does not define any claim term. This passage certainly does not provide any reason to deviate from the plain meaning of the term "base," which was selected by the patentee to claim his purported invention and which cannot now be ignored or rewritten.

*Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins,* 216 F.3d at 1046; *Zelinski*, 185 F.3d at 1317; *Phillips Petroleum Co.*, 157 F.3d at 876.

Similarly, O'Keefe's opinions regarding the "tubular portion" are unsubstantiated. *See* O'Keefe Decl. at ¶ 20 (asserting O'Keefe's opinion as to what one of ordinary skill in the art would understand regarding the meaning of the term "tubular portion" without providing any reasons as to why this opinion was formed). O'Keefe again goes straight to the purported *purpose* of the tubular portion while ignoring the *language* of the particular limitation. *See id*. There is nothing in O'Keefe's purported purpose that would distinguish a *tubular* portion from *any other* portion. O'Keefe asserts that one of skill in the art would "understand that threading does not change" the "fact" that the inner portion of a nut is cylindrical, again without any reasons for these assertions being provided. Each of these conclusory statements should be given no weight. *See, e.g.*, *Sitrick*, 516 F.3d at 101; *Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins,* 216 F.3d at 1046; *Zelinski*, 185 F.3d at 1317; *Phillips Petroleum Co.*, 157 F.3d at 876.

      **ii.**    **"Engaged"**

O'Keefe "[does] not argue" with Defendant's definition of the term "engaged" but goes on to assert that, in his opinion, one of ordinary skill in the art would understand the term to be broader than the dictionary definition identified by defendants and include, among other things, fashioning the two components from the same material. *See* O'Keefe Decl. at ¶ 22. Disagreement over the meaning of a claim term, a legal matter, does not rise to the level of a dispute of a material issue of fact, and cannot be used to avoid summary judgment. *See, e.g.*, *Becton Dickinson & Co.*, 922 F.2d at 797; *Johnston v. IVAC Corp.*, 885 F.2d at 1579-80. Additionally, once again, O'Keefe fails to identify even a single reason why he formed such an

opinion. *See id*. Accordingly, this opinion should be given no weight. *See, e.g.*, *Sitrick*, 516 F.3d at 101; *Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins,* 216 F.3d at 1046; *Zelinski*, 185 F.3d at 1317; *Phillips Petroleum Co.*, 157 F.3d at 876.

Further, O'Keefe goes on to make the nonsensical assertion that "a person of ordinary skill in the art would appreciate that all of the above methods of "engagement" [which include fashioning from the same material] *are physically separable*." *See* O'Keefe Decl. at ¶ 22 (emphasis added). Components formed of the same material are not physically separable – they can be cut or torn apart, perhaps, but such would not be considered "disengagement" of two separate parts. O'Keefe provides no basis for his opinion in this regard, and this ridiculous opinion should therefore be given no weight. *See, e.g.*, *Sitrick*, 516 F.3d at 101; *Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins,* 216 F.3d at 1046; *Zelinski*, 185 F.3d at 1317; *Phillips Petroleum Co.*, 157 F.3d at 876.

### iii. Doctrine Of Equivalents Regarding "Base", "Tubular Portion", and "Engaged"

O'Keefe's opinions regarding infringement of these limitations under the doctrine of equivalents is similarly unsubstantiated and conclusory, and should similarly be disregarded. *See* O'Keefe Decl. at ¶¶ 24-27.

### iv. "Second Camming Area Spaced From The First Camming Area"

O'Keefe's opinions regarding the camming area limitations are equally unsupported. O'Keefe offers opinions on the meaning of the term "camming area" (*see* O'Keefe Decl. at ¶¶ 31-32) and on the meaning of the term "spaced from" (*see id*. at ¶ 30), each without offering any basis for his opinions. Indeed, O'Keefe's opinions defy common sense; O'Keefe opines that "a person of ordinary skill in the art would understand that a camming area is one extending beneath the substrate, or rail, which the locking means is meant to engage or disengage." *Id*. at ¶

32.  Whatever one of ordinary skill in the art might understand regarding the claim as a whole, it cannot seriously be said that, confronted with the term "camming area," one would read in a rail and a locking means that is meant to engage or disengage the rail; at a minimum, such an assertion must be backed up with the bases for the assertion.  No such bases are presented in O'Keefe's declaration.

O'Keefe opines that there are "a vast array of different types of cams, comprising an equally vast array of shapes and sizes" to rebut Defendant's position that a camming area is the area extending farthest from the point of rotation of the locking portion.  O'Keefe Decl. at ¶ 31.  O'Keefe presents no actual evidence that such an array of cams exist, and more importantly, presents no evidence that any such cam has a camming area that is *not* the farthest from the point of rotation of the cam.  In other words, not only does O'Keefe fail to provide a basis for his opinion, he fails to rebut the position taken by the Defendant.

O'Keefe goes on to opine that "the purpose of the camming areas of claim 2 of the '871 patent is to engage the rail."  O'Keefe Decl. at ¶ 33.  Of course, this opinion fails to take into account that the claim does not recite "camming areas," but instead recites "a first camming area and a second camming area spaced from the first camming area."  '871 Patent, Exh. A to Hammitte Decl. (dckt. no. 151), at claim 2.  Nowhere does O'Keefe opine as to the purpose of there being a second camming area that is spaced from the first camming area.

O'Keefe's analysis of the Accused Products is also faulty.  O'Keefe opines that, "[a]s the actuating handle is moved to a closed position, the first camming area loosely engages the rail… [a]s the actuating handle is moved further along its path, the rounded vertex between the first camming area and the second camming area moves below the rail, providing a transitional area or space between the camming areas… [f]inally as the actuating handle is moved to the locked

7

position, the second camming area is moved to the locked position, the second camming area rotates beneath the rail, fully engaging the locking means to the rail…" O'Keefe Decl. at ¶ 34. As can be seen by comparing Figs. 2 and 12 to the O'Keefe Decl., the portion of the Accused Products identified by O'Keefe as the "first camming area" *never engages the rail*. Regardless of the position of the handle, this "first camming area" does not touch the rail. See Fig. 2 of the O'Keefe Decl., in which the handle is in the open position and the "first camming area" does not extend far enough downward to engage a rail, and Fig. 12 of the O'Keefe Decl., in which the handle is in the closed position and the "first camming area" is not located under where the rail would be. The reason for this is simple; if the "first camming area" identified by O'Keefe were to engage the rail, the mount would be impossible to remove. In actuality, when the handle of the Accused Products is in the open position (as in Fig. 2), the mount is removable because the locking means does not contact or overhand the rail.

Because O'Keefe presents opinions that are demonstrably false, and opinions for which he provides no bases whatsoever, his opinions with regard to the "first camming area and a second camming area spaced from the first camming area" should be disregarded. *See, e.g.*, *Sitrick*, 516 F.3d at 101; *Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins,* 216 F.3d at 1046; *Zelinski*, 185 F.3d at 1317; *Phillips Petroleum Co.*, 157 F.3d at 876.[2]

---

[2] Additionally, A.R.M.S. provides a partial quote from Defendant's Initial Contentions that was truncated in a way to suggest that Defendant asserted that the Accused Devices had two camming surfaces. *See* Opp. at 17-18. The full quote demonstrates that Defendant argued instead that there was but a single cam area, that consisted of two straight cam sections merged by a curved cam section:

> The integral cam plate (72) of the locking lever (56) includes two substantially straight tapered cam surfaces (74, 76) that are merged by an intermediate substantially curved tapered cam section (56, 72, 74, 76 78).

*See* Defendant's Initial Contentions, Exh. H to Cronin Decl., at 6. There is no spacing of camming areas in the Accused Products, and Defendants have never suggested otherwise.

   **c.**  **Because the O'Keefe Declaration provides no factual basis for any opinion contained therein, it cannot raise a genuine issue of material fact**

Because A.R.M.S.' purported expert failed to provide any of the factual bases for any of his opinions, his declaration cannot raise a genuine issue of material fact. *See Sitrick v. DreamWorks, LLC*, 516 F.3d at 1001; *Dynacore Holdings Corp.*, 363 F.3d at 1278; *Arthur A. Collins, Inc.* 216 F.3d at 1046; *Zelinski v. Brunswick Corp.*, 185 F.3d at 1317; *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d at 876.

  **2.**  **A.R.M.S. Has Failed to Rebut LaRue's Affirmative Evidence Of Noninfringement**

LaRue's motion for summary judgment is based on affirmative evidence of non-infringement. LaRue identified claim limitations, presented factual evidence as to the plain meaning of the limitations, including A.R.M.S.'s sworn interrogatory responses and dictionary definitions of the claim terms, and demonstrated that these limitations were not found in the Accused Products, referencing the products themselves. A.R.M.S. has failed to rebut any of LaRue's affirmative evidence. Instead, A.R.M.S. takes issue with the plain meaning of terms such as "base," "tubular portion," and "spaced from;" yet A.R.M.S. offers nothing other than impermissible conclusory opinion as to the meanings of these terms.

Further, A.R.M.S. reliance on *Gemtron* and *Crown Packaging* is misplaced, because A.R.M.S. ignores that LaRue has presented affirmative evidence of non-infringement. Neither *Gemtron* nor *Crown Packaging* requires discounting arguments made in summary judgment briefing, particularly when (as here) the arguments are based on affirmative evidence and the only counter-arguments offered consist entirely of conclusory opinion testimony, as discussed further below. *See Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) (finding that unsworn attorney argument made for the first time at oral argument on appeal

cannot be used to rebut video and other admitted evidence on a point which the profferor did not dispute either at summary judgment, at trial, or in its appellate brief); *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 559 F.3d 1308, 1314-1315 (Fed. Cir. 2009) (finding a genuine issue of material fact as to infringement by equivalents where asserted additional functions of a particular limitation were not addressed by the accused infringer's expert and where no actual evidence of the additional functions was presented).  In the present case, actual evidence was presented.

### 3. LaRue Properly Relies Upon the Plain and Ordinary Meaning of the Claim Terms

The parties agreed that certain claim terms should be given their plain and ordinary meaning, and LaRue relies upon such meaning in support of its motion.  "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1286 (Fed. Cir. 2010) (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).

In support of the plain meaning of the claim terms, LaRue has offered several dictionary definitions.  Contrary to ARMS suggestion, reference to dictionaries is entirely appropriate.  *See, e.g.*, *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("it is entirely appropriate for the district court to look to dictionaries or other extrinsic sources for context to aid in arriving at the plain meaning of a claim term.").  A.R.M.S. does not argue that these definitions are inconsistent with the plain meaning of the terms.

A.R.M.S. has contended that one of ordinary skill in the art possesses nothing beyond a high school diploma and 6-7 years of machine shop experience.  *See* O'Keefe Decl., dckt. no. 160-10, at ¶ 10.  A.R.M.S. does not suggest that such a person would understand plain English in

some fashion contrary with its ordinary and accustomed meanings. Accordingly, reference to dictionaries is entirely appropriate. *See, e.g.*, *Helmsderfer*, 527 F.3d at 1382.

### 4. The Actuating Means and the Locking Means Are Required By The Express Language Of The Claims To Be Physically Separable

In construing the claim term "actuating means," the Court stated that it "does not find it necessary that the actuating handle be mechanically linked to the shaft of the locking means *as described by LaRue Tactical*" (*See* Memorandum & Order, dckt. no. 127, at 13) (emphasis added). A.R.M.S. now reads this statement too broadly in asserting that, under the Court's construction, the claims cannot be read as requiring the actuating means be physically separable from the locking means.

First, the Court did not state that the claim does not require mechanical linkage of the actuating means to the locking means – the Court instead simply did not limit that linkage to the language found at col. 3, line 58 – col. 4, line 2, as suggested by LaRue Tactical. Second, the claim itself, by requiring that the actuating means be engaged to the locking means, inherently requires that the two components be physically separable. *See, e.g.*, *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001) ("[a] particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied.") Indeed, the Court refused to limit the term "actuating means" to the particular mechanical linkage suggested by LaRue Tactical because "[the Court] consider[s] the provision of Claim 2 – pursuant to which 'the actuating means [is] *engaged* to the locking means' to be sufficient to perform the function of actuating." (Mem. & Order, May 12, 2010, at 13) (dckt. no. 127)) (emphasis original).

While A.R.M.S. is correct that, as a general proposition, two limitations can be met in a single component of the accused product, this is only the case where the claim does not expressly

require the two limitations be physically separable. *See, e.g.*, *Gaus v. Conair Corp.*, 363 F.3d 1284, 1291 (Fed. Cir. 2004) (equivalency cannot exist when separate claim limitations are combined into a single component of the accused device if the claim specifically excludes the structure of the accused device); *SciMed Life Sys.,* 242 F.3d at 1345 ("[a] particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied."); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed. Cir. 1994) ("In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims. A stable rigid frame assembled from the seat and back panels is not the equivalent of a separate stable rigid frame which the claim language specifically limits to structures exclusive of seat and back panels."); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (claim limitation requiring a "majority" cannot be equivalent to a "minority," its antithesis). As each of the asserted claims expressly requires the actuating means be "engaged to" the locking means, and thus requires the two components be physically separate items capable of mechanical engagement, the Accused Products cannot, as a matter of law, be found to infringe.

Further, A.R.M.S.' latest contentions make no assertions regarding infringement of the "engaged to" limitation by equivalents. Instead, A.R.M.S.' latest contentions merely address, collectively, the "shaft of the locking means being positioned in the tubular portion of the actuating means with the actuating means engaged to the locking means and the tubular portion butted against the support." *See* A.R.M.S. Amended Supplemental Contentions ("Amended Contentions"), Exh. D to Cronin Decl. (dckt. No. 160-1) at 19-20. The asserted function includes "to couple the locking means to the actuating means." *Id*. The term "couple" when used (as here) as a verb inherently requires (as the claim term "engage" inherently requires) the

1073597.1

joining or linking of two physically separate objects. *See* Random House Webster's College Dictionary, 1996, a copy of which is attached hereto as Exhibit A, at 312 (defining "couple" as "to fasten or associate together in a pair or pairs; to join; connect."). Thus, using A.R.M.S.' own language, as found *both* in the claims and in their contentions, the claim requires an actuating means that is physically separate, and thus capable of being engaged to or coupled to, a distinct locking means.

## 5. A.R.M.S. Improperly Compares The Accused Product With Its Commercial Product, Which May Not Be Covered By Any Of The Asserted Claims

A.R.M.S. and its declarant Phillip O'Keefe repeatedly compare the accused products with a commercially-available A.R.M.S. mount. *See* Opp. at 1-4 and O'Keefe Decl. at ¶¶ 33-34 and Figs. 9-12. A comparison of the accused product to a commercial product of the patentee is improper. *See, e.g.*, *Zenith Labs. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent."). In addition, A.R.M.S. presents no evidence that this mount is covered by any claim of the asserted patent, much less any claim in suit.[3]

A.R.M.S. also improperly suggests that, because either mount can be used on a rail system, the "interchangeability" of the mounts suggests infringement. Again, this is not the test of infringement - A.R.M.S. misreads *Hearing Components* to arrive at this proposition. *Hearing Components* deals only with the interchangeability of a *component* of the accused device with one from the disclosed device as important in determining infringement by equivalents. *See*

---

[3] Indeed, A.R.M.S.' failure to mark this product with the '871 patent number suggests that it knows the product is not covered by the '871 patent. *See* Opp. at 2 and O'Keefe Decl. at Figs. 8-12, showing the A.R.M.S. product not marked with the '871 patent.

1073597.1

*Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1370 (Fed. Cir. 2010). The case says nothing regarding the wholesale substitution of the accused product for a commercial product made by the patentee which may or may not be covered by any asserted claim, as here.

## Conclusion

LaRue Tactical presented a motion for summary judgment on noninfringement, an issue on which Plaintiff bears the ultimate burden of proof, based on affirmative evidence; accordingly, A.R.M.S. had the burden to designate specific facts showing that there was a genuine issue for trial. *Arthur A. Collins,* 216 F.3d at 1046 (as to which the plaintiff bore the burden of proof, the defendant discharged its *initial responsibility by stating* the basis for its motion and pointing out that the evidence in the record would be insufficient to avoid a directed verdict against the plaintiff; in response, plaintiff was required to designate specific facts showing that there was a genuine issue for trial). A.R.M.S. in response provided conclusory expert opinion that has repeatedly been held insufficient to overcome a motion for summary judgment. *See Dynacore Holdings*, 363 F.3d at 1278 (finding that conclusory expert opinion did not create a material factual dispute for trial); *Arthur A. Collins*, 216 F.3d at 1046 (holding that plaintiff's conclusory expert report failed to show that there was a genuine issue for trial); *Zelinski*, 185 F.3d at 1317 (conclusory expert declarations devoid of facts upon which the conclusions were reached do not raise a genuine issue of material fact). Accordingly, Defendant's motion for summary judgment of noninfringement should be GRANTED.

Dated:  December 6, 2010

AUSTIN PRECISION PRODUCTS, INC. d/b/a LARUE TACTICAL,

By their Attorneys

 /s/ Thomas P. McNulty
Thomas P. McNulty (BBO No. 654564)
Ann Lamport Hammitte (BBO No. 553263)
LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA  02142
Telephone:     (617) 395-7000
Facsimile:     (617) 395-7070
emailservice@LL-A.com

Rosanna Sattler (BBO No. 442,760)
James E. Kruzer, (BBO No. 670,827)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston MA  02199-8004
Telephone:  (617) 973-6135
Facsimile:  (617) 722-4950

Douglas D. Russell
TAYLOR RUSSELL & RUSSELL, P.C.
10601 FM 2222
Building R, Suite 12
Austin, TX 78730
(512) 338-4601

15

1073597.1

## **CERTIFICATE OF SERVICE**

      I hereby certify that true and correct copies of the foregoing were served on the following counsel of record by CM/ECF this 6th day of December, 2010.

                Paul L. Hayes (BBO # 227,000)
                (phayes@mintz.com)
                Paul J. Cronin (BBO # 641,230)
                (pcronin@mintz.com)
                MINTZ LEVIN COHN FERRIS GLOVSKY
                AND POPEO, P.C.
                One Financial Center
                Boston, MA 02111
                Telephone: (617) 542-6000
                Facsimile: (617) 542-2241

                                            /s/     Thomas P. McNulty

1073597.1