IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC.,<br><br>            Plaintiff,<br>v.<br><br>AUSTIN PRECISION PRODUCTS, INC. d/b/a LARUE TACTICAL,<br><br>            Defendant. | Civil Action No. 09-cv-10034 (DPW) |

### MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO COMPEL PLAINTIFF'S 30(B)(6) DEPOSITION TESTIMONY ON DECEMBER 15, 16, AND 17 AND APPOINT A DISCOVERY MASTER; SUPPLEMENTAL RESPONSES TO INTERROGATORIES, AND PRODUCTION OF DOCUMENTS FROM PLAINTIFF [REDACTED]

Defendant, Austin Precision Products, Inc. ("LaRue"), moves to compel attendance of two witnesses designated pursuant to Fed. R. Civ. P. 30(b)(6) prepared to testify on behalf of Plaintiff, Atlantic Research Marketing Systems, Inc. ("ARMS") (as noticed for December 15, 16, and 17) on the topics for which they have been designated, and to complete Richard Swan's individual deposition; for signed interrogatory responses sufficient to identify the LaRue products that ARMS accuses of infringement, the ARMS products it considers to be covered by ARMS' asserted patent, trademark and trade dress, and the statements ARMS considers defamatory, and for production of documents relevant to ARMS' claim for damages. Despite a prior agreement between the parties, ARMS has now refused to produce its designated corporate officers, pursuant to Fed. R. Civ. P. 30(b)(6), for a period of time sufficient to allow them to address the topics for

which the company has designated them. In addition, Plaintiff has refused to allow the conclusion of Richard Swan's individual deposition.

The deadline to complete fact discovery is December 20, 2010 and Plaintiff's attorney first took this position late last week.

## BACKGROUND

ARMS claims that it is entitled to damages arising from allegations of, *inter alia,* patent infringement, trademark and trade dress infringement, unfair competition, defamation, and unfair and deceptive acts and practices in violation of M.G.L. c. 93A. The discovery that LaRue seeks is directed to information and documents that LaRue needs in order to calculate and test ARMS' claims of liability as well as damages.

As detailed below, the parties have engaged in repeated negotiations in writing and orally, without success, and the Court's assistance is required. Due to recalcitrant and obstructionist behavior by Plaintiff's witness at prior depositions, the Defendants ask this Court to appoint a Discovery Master to preside over these depositions.

## ARGUMENT

ARMS is obstructing LaRue's defense by refusing to produce adequately prepared corporate witnesses for enough time to allow them to testify on all of the topics for which they are designated, by refusing to produce relevant documents, and by failing to respond substantively to interrogatories directed to such indisputably relevant issues as ARMS' claims for damages, and the factual bases for ARMS' allegations of infringement, unfair competition, and defamation.

### A. *ARMS Should Not be Allowed to Restrict its 30(b)(6) Testimony*

Recognizing that this is a complex case, the Court authorized additional discovery back in March, including further testimony by Mark LaRue, denied ARMS' motion to quash the deposition of Sharon Swan, and admonished counsel to "work together to get to the merits of the dispute." Exhibit A, Status/Scheduling Conference/Show Cause Hearing transcript, March 10, 2010, 28:19-21; 30:4-5, and 32:25 – 33:3.[1] Mindful of the Court's instructions, and in view of the number of issues involved, the parties agreed to multiple days of deposition for their respective Rule 30(b)(6) designees, and agreed that the parties would have the same number of days to conduct their corporate depositions. Exhibits B-D. ARMS has now reneged on that agreement, refusing to produce corporate designee Sharon Swan for more than one day and refusing to produce Richard Swan for more than three hours. Exhibit E.

Thus far, ARMS has taken the depositions of five (5) LaRue witnesses, over eight (8) days. ARMS has already taken four (4) days of 30(b)(6) testimony, with more to follow since the deposition of Mark Fingar has not yet occurred:

- Josh LaRue         5/18/10
- Anne Koziol        7/22/10, 10/18/10*[2]
- Darrell Lindsey    7/22/10, 10/18/10*
- Mark LaRue         11/3/09, 6/8/10**[3], 6/9/10**, 7/20/10**
- Ellen LaRue        9/24/10
- Mark Fingar        upcoming**

---

[1] The exhibits referenced here are attached to the Declaration of Ann Lamport Hammitte.
[2] *30(b)(6) deposition
[3] **combined individual and 30(b)(6) deposition

LaRue, on the other hand, deposed just three (3) ARMS witnesses and only conducted two (2) days of 30(b)(6) testimony. Moreover, while Richard Swan's corporate testimony took place on two separate days, the actual duration was well under two days: The October 14th deposition began at 9:51 a.m. and breaks were taken from 11:02 a.m. to 11:31 a.m., 12:42 p.m. to 1:51 p.m., from 3:06 p.m. to 3:44 p.m., and from 4:41 to 4:58, before adjourning at 5:07 p.m. On October 15th, the deposition did not begin until 10:21 am. Breaks were taken from 11:41 a.m. to 12:12 p.m., 12:42 p.m. to 2:41 p.m., and from 3:39 p.m. to 4:06 p.m., going off the record at 5:05 p.m. As a result of this dilatory behavior, and the recalcitrance of the witness, Defendant asks that a Discovery Master oversee these depositions.

The following depositions of ARMS' witnesses were taken:

- Brian Fraser-Swan          6/3/10
- Sharon Swan                8/5/10
- Richard Swan               8/6/10, 8/10/10, 10/14/10**[4], 10/15/10**

Sharon Swan was originally designated by ARMS to testify on 67 of the topics in LaRue's deposition notice (Exhibit F), yet during the 30(b)(6) deposition, Richard Swan was unable to answer questions on a variety of topics for which he had been designated, deferring to Mrs. Swan on:

[REDACTED]

---

[4] **combined individual and 30(b)(6) deposition





[redacted]

The volume and import of the subject matter to be covered by Mrs. Swan makes it critical that LaRue has enough time to fully and fairly investigate ARMS' knowledge and position on her topics. *Compare,* Exhibit F and Exhibit I. Accordingly, ARMS should be compelled to live up to its agreement on equal time for corporate testimony and should be prevented from restricting Mrs. Swan's 30(b)(6) testimony and the conclusion of Mr. Swan's combined corporate and individual deposition.

**B. *ARMS Must Provide Substantive Answers to Interrogatories***

ARMS must supplement its answers to Defendant's First Interrogatories by providing a complete list of the ARMS products that embody ARMS' asserted trademarks (Interrogatory No. 14) and a complete list of the products that ARMS alleges were covered by claims of the '871 Patent ( Interrogatory No. 21). Exhibit J.[5] Despite having testified back on October 14, 2010 [redacted], ARMS has failed to supplement these responses. Exhibit G, 447:1-452:20; Exhibit K.

ARMS also should be compelled to supplement its response to Interrogatory No. 6 to provide a corrected chart of alleged instances of defamation, one that excludes references to subject matter that the parties have stipulated are not part of Plaintiff's defamation claims. LaRue has repeatedly requested a corrected chart since ARMS' Fifth

---

[5] Due to the content of the original Interrogatories and in view of the second protective order in this case, LaRue attaches only ARMS 5th Supplemental Responses. LaRue will produce its First Interrogatories *in camera* if the Court desires.

Supplemental Responses were served on August 4, 2010, yet ARMS has failed to produce it.[6] Exhibit K.

ARMS must supplement its answers to Interrogatories 19 and 20 of Defendant's Second Set of Interrogatories to identify the LaRue products that ARMS accuses of trademark and trade dress infringement, and to provide the basis for those contentions. Exhibit L. The discovery deadline is fast approaching, yet ARMS continues to keep LaRue in the dark about which products ARMS claims infringe. As late as October 14, 2010, over 22 months after the complaint was filed, ARMS had not identified those products in its interrogatory responses and was unable to produce a witness prepared to identify them at deposition. Exhibit G, 526:12-529:3. Despite multiple requests, ARMS still has not provided useful answers to these interrogatories. Exhibit G, 526:12-529:3; Exhibit K.

There can be no question that the information in each of these interrogatories goes to the heart of the claims and defenses in this suit. Fed. R. Civ. P. Rule 26(b)(1). ARMS should be ordered to produce signed substantive responses and produce them well before its corporate deposition resumes, so that LaRue can prepare for and conduct a meaningful inquiry.

### C. ARMS Must Produce Relevant Responsive Documents

The federal discovery rules are intended to be broad, providing that discovery may be had of any subject matter "that is relevant to any party's claim or defense." Relevant material is defined as anything that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Despite the breadth of this

---

[6] Due to the content of the response as it stands, and in view of the second protective order in this case, LaRue has not attached the exhibits to ARMS' 5th Supplemental Responses to this motion, but is willing to produce them *in camera*.

Rule, ARMS has improperly refused to produce the following documents, which are indisputably relevant to the claims and defenses in this case:

1. *Licenses with* ▮▮▮▮▮▮▮▮▮▮ - These licenses, and any others ARMS may have, are relevant to ARMS' claim to damages in the form of a reasonable royalty, specifically to the royalties ARMS itself has been able to negotiate, receive, or pay. Exhibit M, Request Nos. 46-49.

2. *Corporate minutes from 2000-2010* – ARMS corporate minutes are responsive to a variety of requests, including Request No. 69: "[a]ll documents sufficient to identify the amount of profit earned by A.R.M.S. in connection with the sale of any goods and/or services under the Marks designation, including, without limitation, sales figures, gross receipts, material costs, labor costs, general and administrative costs, and/or overhead;" Request No. 190: "All documents and things containing information concerning special damages suffered by A.R.M.S. as alleged in Count VII of the Second Amended Complaint;" and Request No. 191: "All documents and things containing information concerning general damages suffered by A.R.M.S. as alleged in Count VII of the Second Amended Complaint." Exhibit M, Request No. 69; Exhibit N, Request Nos. 190-191.

   ARMS asserts that no relevant corporate minutes have been identified, yet unless ARMS is prepared to testify that it has no corporate minutes at all for this time period, the assertion that ARMS did not include in its minutes any mention of such significant business events as initiating and conducting a lawsuit or the alleged decrease in sales strains credibility.

3. *Correspondence between Ben Thomas and ARMS* - Mr. Thomas, a third party identified by ARMS on August 6, 2010 as having knowledge concerning, *inter alia*, the durability, performance or use of ARMS' products in the U.S. Military or as a security contractor, and ARMS' reputation, testified that ███████████ ███████████, yet ARMS has refused to produce that correspondence. Exhibit O, 22:17-24:22. This correspondence is relevant and responsive to Request No. 2 of the documents requested in LaRue's deposition notice and subpoena. Exhibit P, Request 2. Mr. Thomas was represented in that deposition by counsel for ARMS. Exhibit O, 2:3-8.

4. *Complete and accurate electronic spreadsheets of ARMS' sales* – Mrs. Swan testified on August 5, 2010 that ███████████████████████████ ███████████████████████████████████ yet they were not produced to LaRue. Exhibit Q, 65:14-67:11. As of that date ARMS had only produced electronic spreadsheets from 2007 to 2010. *Id.* After LaRue made multiple requests, ARMS eventually produced an electronic spreadsheet that, when compared with the prior paper versions and the partial electronic versions from 2007-2010, was woefully inadequate. Exhibit R. Accurate and detailed records of ARMS' sales are responsive – and essential – to LaRue's defense of ARMS' claim for damages involving lost sales. LaRue has long ago produced the electronic copy of its sales records spreadsheet that ARMS demanded. Exhibit S.

LaRue's Document Request Numbers 12, 13, 30, 65, 66, 69, and 81 (Exhibit M) are directed to elements of ARMS' alleged harm, including sales figures; customers to whom products were sold; variable and fixed costs such as

overhead, administration, manufacturing, research, development, and sales; and profits for products sold under the trademark, trade dress, and patent asserted against LaRue. The data presented in the spreadsheets ARMS originally produced in paper form was truncated within the columns and therefore incomplete and incomprehensible, necessitating access to the document in its native form.

ARMS' sales information is relevant to determine actual sales figures and to determine whether ARMS' sales have been increasing or decreasing over time. The individual customers to whom sales were made are relevant to evaluate whether and when any ARMS customer purchased from LaRue or *vice versa*. The sales history and information concerning individual customers is relevant to ARMS' claim that it has been harmed by LaRue's internet postings, such as by individual lost sales or interference with contractual relations. The sales history, customer information, costs, expenses and production capacity associated with the sales are relevant to ARMS' claims of lost profits. If ARMS intends to maintain its claims for damages for infringement, defamation, interference with contractual relations, unfair competition, or commercial disparagement, it must produce these documents in useable electronic form or be precluded from introducing such evidence at trial.

5. *Documents concerning attorneys' fees* – ARMS demanded attorneys' fees in connection with its Chapter 93A claim, yet refuses to produce documentation of those fees until well after the close of discovery. These documents are clearly

relevant to ARMS' claim for damages and are responsive to Request No. 188. Exhibit T.

6. *Tax and Payroll information* – Tax and payroll documents are relevant to ARMS' calculation of its alleged lost profits. The number of persons on the payroll, and the amount of money paid to each, is relevant to the calculation of ARMS' overhead, and ARMS' tax payments are relevant to determine the actual profit ARMS reported to the Government and to evaluate the accuracy of ARMS' calculation of profits. Exhibit M, Request Nos. 12, 13, 30, 65, and 69.

7. *Pictures from SHOT Shows including Shows prior to 2010* – These photos are relevant to ARMS' expected testimony on its advertising and promotional efforts, and are responsive to at least Request Nos. 63, 68, 78, 85, 89, 121, 204. Exhibits M, N, and T.

8. *Firearms and/or relic licenses and/or permits for Sharon Swan, Richard Swan, and ARMS* – these documents are relevant to any testing of the firearms by A.R.M.S.' principals and their ability to do so, and responsive to Defendant's 3rd Request to A.R.M.S. (Exhibit N, Request Nos. 206 and 207); Document Requests to Richard Swan, Nos. 10 and 11 (Exhibit U); Document Request to Sharon Swan, No. 10 (Exhibit V).

9. *Documents from Bay State Manufacturing* – Bay State manufactures mounts for ARMS, yet ARMS produced only the first page of the purchase orders between itself and Bay State. Clearly, LaRue is entitled to the entirety of these documents, which are relevant to ARMS' calculation of its alleged lost profits and responsive to at least Request Nos. 12, 13, 30, 65, and 69. Exhibit M. Moreover, ARMS has

not produced the following documents, which Baystate's witness testified did exist: ████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████████████████████████
██████████████████████████████
████████████████████████████
██████████████████████████
████████████████████████████████
████████████ Following the deposition, LaRue again requested these documents back in September, and as a result, ARMS produced the partial purchase orders described above. See Exhibit W. The remainder should also be produced.

### D. *ARMS Should Pay the Cost of Preparing this Motion.*

It is clear that over and over again throughout the discovery phase, ARMS failed to comply with its discovery obligations, despite repeated requests by LaRue that it produce documents and substantive responses to interrogatories. In addition to requiring ARMS to produce documents and supplement and sign its interrogatory responses, LaRue asks this Court to order ARMS to pay the reasonable expenses incurred in preparing this motion under Fed. R. Civ. P. 37(a)(5), and any costs that may be incurred in depositions that have to be continued as a result of ARMS' failure to comply with its

discovery obligations. Depositions must be completed by December 20th, and these documents and responses are needed to effectively prepare for and conduct those depositions.

## CONCLUSION

For the foregoing reasons, LaRue requests the Court issue an Order (a) compelling ARMS to produce Richard Swan for the conclusion of his combined 30(b)(6) and individual deposition, and corporate witnesses prepared to testify on all of the topics for which they have been designated, with enough time to fairly inquire; (b) requiring these depositions to be overseen by a Discovery Master; (c) requiring production of the documents sought in the requests identified herein, including production in native electronic format; (d) compelling ARMS to respond substantively to the interrogatories identified herein, and (e) awarding LaRue its costs and attorney's fees. If ARMS fails to comply, LaRue requests the Court provide notice that LaRue will be entitled to preclude use of such materials at trial and to inferences adverse to ARMS, based on ARMS' failure to produce documents and substantive responses.

Respectfully submitted,

AUSTIN PRECISION PRODUCTS, INC.,
d/b/a LARUE TECHNICAL,

By its Attorneys

Dated: December 8, 2010

/s/   Ann Lamport Hammitte
Thomas P. McNulty (BBO 654,564)
Ann Lamport Hammitte (BBO 553,263)
LANDO & ANASTASI, LLP
One Main Street, 11th Floor
Cambridge, MA  02142
Telephone:  (617) 395-7000
Facsimile:  (617) 395-7070
emailservice@LL-A.com

Rosanna Sattler (BBO No. 442,760)
James E. Kruzer, (BBO No. 670,827)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston MA  02199-8004
Telephone:  (617) 973-6135
Facsimile:  (617) 722-4950

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO COMPEL PLAINTIFF'S 30(B)(6) DEPOSITION TESTIMONY ON DECEMBER 15, 16, AND 17 AND APPOINT A DISCOVERY MASTER; SUPPLEMENTAL RESPONSES TO INTERROGATORIES, AND PRODUCTION OF DOCUMENTS FROM PLAINTIFF [REDACTED]  was served on counsel of record by the ECF system and will be sent electronically to the registered participants this 8th day of December 2010:

Paul L. Hayes (BBO # 227,000)
(phayes@mintz.com)
Paul J. Cronin (BBO # 641,230)
(pcronin@mintz.com)
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Dated:  December 8, 2010            /s/  Ann Lamport Hammitte